**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| STASHER, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 6:18-cv-312 |
| ZIP TOP, LLC, and FINELL CO., LLC, | § | |
| | § | |
| Defendants | § | |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Stasher, Inc., by and through its undersigned counsel, brings this action for patent infringement against Defendants Zip Top, LLC and Finell Co., LLC ("Defendants") relating to U.S. Patent No. 9,371,153 (the '153 Patent) and alleges as follows:

### PARTIES

1.      Plaintiff Stasher, Inc. ("Stasher") is a California corporation with its principal place of business at 1465 Park Ave, Emeryville, CA 94608.

2.      Stasher's containers are the first plastic-free self-sealing containers in the world, providing a healthier alternative to plastic bags and containers for people and the planet.  Stasher containers are durable at any temperature from freezer to oven providing great convenience to users.  Market acceptance of Stasher containers since their introduction several years ago has been tremendous, with significant  year-over-year sales growth.  Stasher containers have nearly unlimited uses in food storage, travel, and many other markets.  Stasher represents exactly the type of innovation and small-company risk-taking that the patent system is intended to protect.

3.      Stasher and its products have received numerous prestigious awards, accolades, and widespread commercial success, including winning the prestigious Global Innovation Award (Home Organization and Storage), the Red Dot International Design Award for Product Design

in 2016, Inc. Magazines "*The 7 Most Brilliant Product Designs of 2016*" (June 2016), and it was a finalist for the British Excellence in Housewares, Product Innovation Award in October 2018. In January 2018, Stasher was featured on ABC's *Shark Tank* television program and was offered a lucrative deal by seasoned investor Mark Cuban, with other *Sharks* later commenting that they were also interested in investing in the company.

4.      Stasher is the owner of multiple patents for its innovative and unique products issued in the United States, registered in 28 member states of the European Union, in China, and has pending applications relating to its storage containers and seals in major industrial economies throughout the world, including in Japan, Korea, Europe, and Australia.

5.      Defendant Zip Top, LLC ("Zip Top") is a Texas Limited Liability Company with a principal place of business in Austin, Texas.

6.      Defendant Finell Co., LLC ("Finell") is a Texas Limited Liability Company with a principal place of business in Austin, Texas.

## JURISDICTION AND VENUE

7.      Stasher brings this civil action for patent infringement pursuant to the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

8.      Upon information and belief, Defendants Finell and Zip Top transact and conduct business in this District and State of Texas, and are subject to the personal jurisdiction of this Court.  Upon information and belief, Defendants have minimum contacts within the State of Texas and this District and have purposefully availed themselves of the privileges of conducting business in the State of Texas and in this District.  Stasher's causes of action arises directly from Defendants' business contacts and other activities in the State of Texas and in this District.

9.      Upon information and belief, Defendants have committed acts of infringement, both directly and indirectly, within this District and the State of Texas by, *inter alia*, using, selling, offering for sale, importing, advertising and/or promoting products that infringe one or more claims of the Patent-in-Suit.  More specifically, Defendants, directly and/or through intermediaries, use, sell, ship, distribute, offer for sale, advertise, and otherwise promote their

products in the United States, the State of Texas, and this District.  Upon information and belief, Defendants solicits and/or has customers who are residents of the State of Texas and this District for the Accused Products.

10.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c) and 1400(b), including based on Defendants' physical presence and headquarters being located in this district.

## THE PATENT-IN-SUIT

11.     Stasher owns the entire right, title, and interest in U.S. Patent No. 9,371,153 entitled "Shaped Elastomeric Container with Integrated Leak Resistant Seal" (the '153 Patent). The '153 Patent issued on June 21, 2016 to inventors Ms. Katousha Ghaemi Nouri and Mr. Paul Maguire from the U.S. Patent Application No. 14/639,065, filed on March 4, 2015.  A true and correct copy of the '153 Patent is attached as **Exhibit A** to this Complaint.

## COUNT I

(INFRINGEMENT OF U.S. PATENT NO. 9,371,153)

12.     Stasher incorporates by reference paragraphs 1-11 above.

13.     Katousha Ghaemi Nouri and Paul Maguire invented a novel storage bag and seal. Nouri and Maguire patented these innovations in the '153 patent.

14.     Defendants have directly and indirectly infringed and continue to infringe the '153 patent by making, using, offering for sale, selling and/or importing into the United States storage containers, including, for example, Defendant Zip Top's "Cup," "Dish," and/or "Bag" products.  Defendants are offering one of more of these products for sale and distribution in violation of Stasher's patent rights, including via Zip Top's web site as well as via a Kickstarter campaign, and at trade shows.  The devices listed in this paragraph are referred to in this Count as the "Accused Products."

15.     Claim 12 of the '153 Patent, a claim representative of Stasher's patented technology, reads as follows:

> 12. A shaped elastomeric container with an integrated leak resistant seal, wherein the shaped elastomeric container comprises:
>
> an elastomer;

a top enclosure and a bottom enclosure comprising said elastomer, said

top enclosure located on or above a center horizontal plane, said

bottom enclosure located on or below said center horizontal plane,

wherein said top enclosure and said bottom enclosure are configured

to provide an inner volume of said shaped elastomeric container, and

wherein

each of said top enclosure and said bottom enclosure comprises:

a front edge configured to move to provide access to said inner

volume,

a back edge opposite said front edge,

a left edge, and

a right edge opposite said left edge;

said top enclosure is coupled to said lower enclosure along portions of

one or more of said back edge, said left edge, said right edge, and

said front edge;

a leak resistant seal configured to open and close said shaped

elastomeric container, comprising:

a bottom press-fit element proximal to said front edge of said bottom

enclosure;

a top press-fit element proximal to said front edge of said top

enclosure;

wherein

an upper surface of said bottom press-fit element corresponds with a

lower surface of said top press-fit element, such that said upper

surface and said lower surface are in contact at a boundary when

said shaped elastomeric container is closed;

a cross-sectional profile of said boundary in the plane perpendicular

to said front edge comprises a winding path wherein

said winding path comprises four points at which a normal vector to said winding path is respectively in four directions comprising an up direction, a down direction, a front direction, and a back direction; and,

a length of said winding path is at least two times a horizontal distance between a start of said winding path and an end of said winding path measured on an axis from back to front,

wherein said leak resistant seal is integrated into said shaped elastomeric container,

wherein said bottom press-fit element is located opposite to said top press-fit element,

wherein one or both of said bottom press-fit element and said top press-fit element comprise a vertical protrusion with one or more vertically offset ridges extending horizontally from said vertical protrusion,

wherein said one or more vertically offset ridges on one or both of said bottom press-fit element and said top press-fit element lock into place into corresponding indentations on the opposite of one or more of said bottom press-fit element and said top press-fit element, and,

wherein said top press-fit element and said bottom press fit element mate together to seal said shaped elastomeric container.

16.     Defendants have directly and indirectly infringed, and continues to infringe one or more claims of the '153 patent, including at least claim 12, literally and/or under the doctrine of equivalents, by or through making, using, offering for sale, selling within the United States, and/or importing the Accused Products.

17.     With respect to claim 12, for example, the Accused Products consist of "a shaped elastomeric container with an integrated leak resistant seal." The Accused Products are elastomeric, and feature a leak resistant seal with interlocking teeth.

- 5 -

18.     The Accused Products feature "an elastomer."  The Accused Products are upon information and belief represented to be 100% platinum silicone.

19.     The Accused Products have "a top enclosure and a bottom enclosure comprising said elastomer, said top enclosure located on or above a center horizontal plane, said bottom enclosure located on or below said center horizontal plane, wherein said top enclosure and said bottom enclosure are configured to provide an inner volume of said shaped elastomeric container."  The Accused Products have a top and a bottom, where the top half is above the center horizontal plane, the bottom half is below the center horizontal plane, and the top is coupled to the bottom.

20.     The Accused Products have "a front edge configured to move to provide access to said inner volume, a back edge opposite said front edge, a left edge, and a right edge opposite said left edge; said top enclosure is coupled to said lower enclosure along portions of one or more of said back edge, said left edge, said right edge, and said front edge."  The Accused Products have a back edge and a front edge opposite said back edge configured to provide access to its inner volume, as well as a left and right edge opposite one another.  The Accused Products' top enclosure and lower enclosure are coupled together along at least portions of one or more of the back edge, left edge, right edge, and front edge.

21.     The Accused Products have "a leak resistant seal configured to open and close said shaped elastomeric container, comprising: a bottom press-fit element proximal to said front edge of said bottom enclosure; a top press-fit element proximal to said front edge of said top enclosure."  The Accused Products have a top press-fit element and a bottom press-fit element that comprise a leak resistant seal configured to open and close the elastomeric container.

22.     The Accused Products have "an upper surface of said bottom press-fit element correspond[ing] with a lower surface of said top press-fit element, such that said upper surface and said lower surface are in contact at a boundary when said shaped elastomeric container is closed."  The Accused Products have a top press-fit element and a bottom press-fit element; the respective lower and upper surfaces correspond accordingly and are mated together.

23.     The Accused Products have "a cross-sectional profile of said boundary in the plane perpendicular to said front edge comprises a winding path wherein said winding path comprises four points at which a normal vector to said winding path is respectively in four directions comprising an up direction, a down direction, a front direction, and a back direction." The Accused Products feature a cross-sectional profile that comprises a winding path where, along the path, a normal direction vector can be drawn in all four directions.

24.     The Accused Products have "a length of said winding path [that] is at least two times a horizontal distance between a start of said winding path and an end of said winding path measured on an axis from back to front." The Accused Products feature a winding path distance of 2.65 times the horizontal distance between the start and end of said winding path.

25.     The Accused Products have a "leak resistant seal [that] is integrated into said shaped elastomeric container." The Accused Products' seal is part of the Accused Products that forms the whole and allows them to contain a substance.

26.     The Accused Products have a "bottom press-fit element located opposite to said top press-fit element." In order for the Accused Products to close, the top press-fit element must be opposite to the bottom press-fit element.

27.     The Accused Products are designed such that "one or both of said bottom press-fit element and said top press-fit element comprise a vertical protrusion with one or more vertically offset ridges extending horizontally from said vertical protrusion." At least one of the press-fit elements in the Accused Products features a vertical protrusion with one or more vertically offset ridges extending horizontally from said vertical protrusion.

28.     The Accused Products are designed such that "said one or more vertically offset ridges on one or both of said bottom press-fit element and said top press-fit element lock into place into corresponding indentations on the opposite of one or more of said bottom press-fit element and said top press-fit element, and, wherein said top press-fit element and said bottom press-fit element mate together to seal said shaped elastomeric container." The vertically offset ridges on at least one of the Accused Products' press-fit elements lock into place into corresponding indentations on the opposite press-fit element, such that the top press-fit element

and bottom press-fit element mate together to seal the Accused Products' shaped elastomeric container.

29.     As a result of Defendants' infringement of the '153 Patent, Stasher has suffered monetary damages and is entitled to no less than a reasonable royalty for Defendants' use of the claimed inventions of the '153 Patent, together with interest and costs as determined by the Court.  Stasher will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

30.     Stasher will be irreparably harmed unless a preliminary and/or permanent injunction is issued, enjoining Defendants and their agents, employees, representatives, affiliates, and others acting in concert with Defendants from infringing the '153 Patent.

31.     By at least as early as March 10, 2018, Defendants had actual knowledge or should have known of the '153 Patent and that Defendants' activities were infringing this patent. On or about March 10, 2018, Defendants received actual notice of Plaintiff's '153 patent at the International Home and Housewares show in Chicago, Illinois.  After receiving actual knowledge of the '153 Patent, Defendants have continued to make, use, sell, offer for sale, and/or import infringing products into the United States despite knowing that there was a high likelihood of infringement.

32.     On information and belief, Defendants' past and continuing infringement has been deliberate and willful, and this case is therefore an exceptional case, which warrants award of treble damages and attorneys' fees to Plaintiff pursuant to 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

33.     WHEREFORE, Stasher, Inc. requests the following relief from this Court:

(A)     A judgment that each defendant is liable for infringement of one or more claims of the '153 Patent;

(B)     Compensatory damages in an amount according to proof, and in any event no less than a reasonable royalty, including all pre-judgment and post-judgment interest at the maximum rate allowed by law;

(C)     Treble damages for willful infringement pursuant to 35 U.S.C. § 284;

(D)     Pre-judgment interest;

(E)     Post-judgment interest;

(F)     An order and judgment permanently enjoining Defendants and their officers, directors, agents, servants, employees, affiliates, attorneys, and all others acting in privity or in concert with them, and their parents, subsidiaries, divisions, successors and assigns from further acts of infringement of the patents-in-suit;

(G)     A judgment that this is an exceptional case and awarding Stasher, Inc. its costs and reasonable attorneys' fees incurred in this action as provided by 35 U.S.C. § 285; and

(H)     A judgment granting Stasher, Inc. such further relief as the Court may deem just and proper.

## JURY DEMAND

Stasher, Inc. hereby demands trial by jury on all issues so triable pursuant to Fed. R. Civ. P. 38.

DATED:  October 19, 2018

By: */s/ Deron R. Dacus*
    Deron R. Dacus

**DENTONS US LLP**
Robert F. Kramer
CA Bar No. 181706 (*pro hac vice* pending)
robert.kramer@dentons.com
1530 Page Mill Road, Suite 200
Palo Alto, CA 94304-1125
Telephone: (650) 798-0300
Facsimile: (650) 798-0310

**The Dacus Firm, P.C.**
Deron R. Dacus
Texas Bar No. 00790553
ddacus@dacusfirm.com
821 ESE Loop 323
Suite 430
Tyler, TX 75701
Telephone: (903) 705-7233
Facsimile: (903) 581-2543

*ATTORNEYS FOR PLAINTIFF STASHER, INC.*